FILED
SUPERIOR COURT
OF GUAM

2024 APR 23 PH 3: 38

CLERK OF COURT

BY:_____ ꝳꝳ

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| JUANITA ARCEO, | **CIVIL CASE NO. CV0397-20** |
| Plaintiff, | |
| vs. | **DECISION AND ORDER DENYING MOTION FOR NEW TRIAL AND MOTION FOR STAY OF EXECUTION** |
| CULGUAM, INC. doing business as COST-U-LESS EXPRESS and JOHN DOE INSURANCE COMPANY, | |
| Defendants. | |

In this personal injury matter, a jury has found Defendant Culguam, Inc. dba Cost-U-Less negligent and awarded Plaintiff Juanita Arceo $2,751,710.00 in damages. Cost-U-Less now moves for a new trial and to stay execution of the Judgment, alleging that the damages award was excessive, there was insufficient evidence to justify the verdict, and Cost-U-Less did not receive a fair trial. Upon review of the parties' arguments, the Court finds that the jury's decision and award were supported by substantial evidence and Cost-U-Less had a fair trial. Therefore, the Motion for New Trial is DENIED, and as a result, the Motion for Stay of Execution is moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Arceo sued Cost-U-Less following an incident occurring on May 4, 2020, in which she slipped and fell inside the Cost-U-Less store in Chalan Pago. The case proceeded to a jury trial from August 22 to 30, 2022. During the trial, the Court heard testimony from expert Doris Shriver along with various other witnesses. The jury returned a verdict finding Cost-U-Less not

ORIGINAL

negligent. However, upon review of a Motion for New Trial alleging juror misconduct, the Court granted a new trial.

The second jury trial occurred from December 11 to 19, 2023. Prior to the start of trial, the Court addressed using the recording of Shriver's prior trial testimony due to her unavailability stemming from various medical conditions. The Court ordered that pursuant to Guam Rule of Evidence 804, the use of her prior testimony was appropriate and allowed her recorded testimony to be played during the second trial. *See* Order Granting Mot. Admit Doris Shriver's Prior Testimony (Dec. 6, 2023).

Also during the second trial, counsel for Arceo engaged in an extensive voir dire of Kenneth Newson, an expert for Cost-U-Less. Counsel introduced a decision issued by the California Court of Appeals upholding a trial court decision finding that Newson improperly attacked another expert's credibility and otherwise provided speculative and conclusory testimony. *See Magyar v. Kaiser Permanente Med. Ctr.*, No. B315353, 2023 WL 355173 (Cal. Ct. App. Jan. 23, 2023).

Additionally at the second trial, the Court heard testimony from witnesses regarding Arceo's injuries, her continued issues since the incident, and expert testimony regarding her medical conditions. The relevant testimony for the purposes of the present motion includes the following:

1. Andrew Arceo, Arceo's brother, testified that she was not herself after the fall and has been unable to use her exercise equipment, which she used almost every day before the incident. Further, Andrew Arceo testified that Arceo had to make various life adjustments to manage her pain. As examples, he provided that she uses multiple pillows when driving and sleeps in a recliner.

ORIGINAL

2. Amelia Indalecio, Arceo's sister, also addressed Arceo's use of exercise equipment, noting that she would use it for an hour at a time prior to her fall.

3. Arceo herself testified regarding her pain, noting that initially she attempted physical therapy to improve her condition but discontinued the treatment due to the pain. Arceo further addressed that she values her health and wishes to seek treatment off-island in order to return to her regular exercise routine and martial arts practice. Finally, Arceo stated that she is scared to do things that will injure her back further.

4. Dr. Grant Walker was admitted as a spine specialist expert. He testified that as a result of the incident, Arceo fractured her spine in three locations, two of which he was able to independently corroborate through her x-rays. He further testified that her description of a nerve shock-style pain at the time of the fall was consistent with the injuries having occurred at that time. Dr. Walker provided that Arceo did not have a prior back injury despite having osteoporosis, noting that osteoporosis did not cause the injury but may have aggravated it, and osteoporosis almost never causes pain. Dr. Walker also surmised that the source of Arceo's hunched appearance was the result of her back fractures and provided that her hunched condition has increased since his last meeting with her in the same manner he predicted. Dr. Walker addressed Arceo's overall decreased function as a result of the incident noting that she is no longer able to practice her martial arts, walk three miles, and do things that involve bending forward. Finally, Dr. Walker concurred with Shriver's assessment of Arceo, providing that it is more probable than not that Arceo will need home care assistance during the last fifteen years of her life.

ORIGINAL

5. Dr. Glenn Cunningham, who was admitted as an expert in orthopedic surgery specializing in the knee, testified regarding the condition of Arceo's knee. Dr. Cunningham concluded that Arceo's knee contained a patella fracture, ruptured ACL, meniscus tear, and stretched-out MCL. The muscles in the back of her knee were also stretched and torn. Dr. Cunningham noted that these injuries and the continued downhill trajectory of Arceo's knee were likely the result of her slip and fall in Cost-U-Less. Dr. Cunningham also addressed the impact of Arceo's osteoarthritis, providing that it merely resulted in wear and tear, and there was no prior indication of concerns regarding Arceo's knee. Finally, Dr. Cunningham stated that as a result of the slip and fall, Arceo requires a total knee replacement.

6. Dr. Edward Younger, who was admitted as an expert in the field of orthopedic surgery, testified that Arceo sustained a knee fracture and back injury from her fall at Cost-U-Less; however, the back injury was likely a sprain or strain with a small possibility that it was a fracture. Dr. Younger testified that Arceo likely sustained the back fracture prior to her fall at Cost-U-Less as a result of her pre-existing conditions. Dr. Younger further stated that based on the location of the fracture in her back it was unlikely the cause of her hunched appearance. However, Dr. Younger also provided that Arceo will never return to normal, struggles to maintain activities, and requires a total knee replacement.

7. Finally, Shriver, who was admitted as a life care planner, vocational expert, and occupational therapist, testified regarding the life care plan she created for Arceo. Shriver testified that it is more likely than not that Arceo will require homecare for ten hours a day for the last fifteen years of her life based on her significant injuries,



their trajectory of declination, and her extensive experience in this area. Shriver also testified to her discussion with Arceo regarding pain and functionality, providing that she found Arceo to be credible as she described her inability to squat, bench, stoop, or lift more than ten pounds. Shriver further testified that pain is the most significant factor in an individual's life, impacting various aspects of their daily living.

Finally, the parties stipulated that Arceo's remaining life expectancy was 27.4 years (or 10,000 days) from the date of the incident. Jury Instructions at 37 (Dec. 21, 2023).

The second jury found Cost-U-Less negligent and that its negligence was a substantial factor in causing harm to Arceo. The jury awarded Arceo $751,170 in economic damages for caregiver assistance; $750,000 in non-economic damages for physical and emotional pain and suffering; $125,000 in non-economic damages for loss of enjoyment of life; $1,000,000 in non-economic damages for physical impairment and disfigurement; and $125,000 in non-economic damages for inconvenience. In total, the jury awarded damages of $2,751,170.

## II.   LAW AND DISCUSSION

### A.   Motion for New Trial

A new trial can be granted "in an action in which there has been a trial by jury for any reasons for which new trials have heretofore been granted in actions at law in the courts of Guam." Guam R. Civ. P. 59(a)(1). Additionally, the Guam Code provides specific circumstances that allow for a new trial to be granted:

> (1) Irregularity in the proceedings of the court, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial; (2) Accident or surprise, which ordinary prudence could not have guarded against; (3) Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence have discovered and produced at trial; (4) Excessive damages appearing to have been given under the influence of passion or prejudice; (5) Insufficiency of the evidence to justify the finding or other

ORIGINAL

decision, and that it is against the law; [and] (6) Error in law, occurring at the trial, and excepted to the party making the exception.

7 GCA § 21501.

Cost-U-Less specifically moves for a new trial alleging each category of damages awarded by the jury was not justified by the evidence and law; the damages award was excessive and provided under the influence of passion or prejudice; the Court's Order finding Doris Shriver unavailable was prejudicial; and the evidence presented during the voir dire of Ken Newson was both a surprise and prejudicial. Mot. New Trial at 4, 10, 12 (Jan. 12, 2024).

**B.     The damages award was supported by the evidence and law.**

In reviewing a jury's award of damages, the Court must look to "whether the award is supported by substantial evidence." *B.M. Co. v. Avery*, 2002 Guam 19 ¶ 13; *see also Guam Top Builders, Inc. v. Tanota Partners*, 2011 Guam 30 ¶ 8. "Substantial evidence is relevant evidence that a reasonable person may accept as sufficient to support a conclusion, even if inconsistent conclusions may be drawn from the evidence." *B.M. Co.*, 2002 Guam 19 ¶ 13; *Guam Top Builders, Inc.*, 2011 Guam 30 ¶ 8. "A jury has substantial discretion in determining the amount of damages, but a new trial may be awarded if the damages are manifestly inadequate, if clear proof of the damages has been ignored, or if the award bears no reasonable relation to the loss suffered." *B.M. Co.*, 2002 Guam 19 ¶ 13.

Cost-U-Less attacks every category of damages awarded: (1) Caregiver Assistance for Ms. Arceo; (2) Physical and Emotional Pain and Suffering; (3) Loss of Enjoyment of Life; (4) Physical Impairment and Disfigurement; and (5) Inconvenience. In doing so, Cost-U-Less focuses on a provision in the jury instructions requiring reasonable certainty that Arceo will

ORIGINAL

suffer the damages.[1]

Cost-U-Less argues that the jury erred in awarding Arceo damages for future caregiver assistance. Mot. New Trial at 4-6. In doing so, it focuses on Shriver's inability to confirm or guarantee how much assistance Arceo will need and for how long as well as her failure to corroborate Arceo's statements. *Id.* However, both Shriver and Dr. Walker testified that Arceo will more likely than not need caregiver assistance for the last fifteen years of her life. Shriver noted that her estimation of fifteen years was based on the Social Security Life Expectancy Tables which are the industry standard. Moreover, Shriver noted that her estimate regarding the number of hours of caregiver assistance that Arceo will require is based on her extensive experience in the area of life care planning along with Arceo's diagnosis and condition and projected deterioration. Finally, Shriver noted that as it relates to Arceo's function, she did not find it necessary to corroborate the information shared by Arceo as she found her to be credible. Based on this information, the Court finds there to have been substantial evidence from which the jury could determine with reasonable certainty that Arceo will suffer the awarded $751,170 in damages for caregiver assistance.

The Court addresses damages for physical and emotional pain and suffering together with damages for loss of enjoyment of life as the evidence supporting these awards has significant overlap. For physical pain and suffering, Cost-U-Less argues that testimony on this topic was limited to past events such as the issues Arceo had in caring for her parents after the injury and pain she felt at the time of the incident. *Id.* at 6-7. For loss of enjoyment of life, Cost-U-Less

---

[1] The Items of Economic Damage instruction provides "[t]o recover damages for future care, Ms. Arceo must prove the reasonable cost of reasonably necessary home care services that she is reasonably certain to need in the future." Jury Instructions at 32. Meanwhile, the Items of Noneconomic Damages instruction states "[t]o recover for future noneconomic damages, Ms. Arceo must prove she is reasonably certain to suffer that harm." *Id.* at 33.

argues that Arceo is still able to spend time with her grandchildren; there was no testimony that she was sad or depressed; and she is not wheelchair or homebound. *Id.* at 7. However, Arceo's brother testified that she was not herself after the fall. Arceo's brother, sister, and Arceo herself all testified regarding her struggles to continue with activities she values and enjoyed prior to the incident, such as using exercise machines and practicing martial arts. Arceo also discussed her fear of further injuring her back as a limiting factor in her life. Moreover, Dr. Walker and Shriver testified regarding her limited mobility. Finally, Arceo briefly testified regarding pain, and Shriver discussed the impact of pain, such as that in Arceo's case, on one's life and how it impacts all aspects of living. As a result, substantial evidence was presented to allow the jury to award $750,000[2] in damages for physical and emotional pain and suffering and $125,000[3] for loss of enjoyment of life with reasonable certainty based on the difficulties and limitations Arceo has faced since her fall at Cost-U-Less.

For physical impairment and disfigurement, Cost-U-Less argues that the hunch in Arceo's back is the result of her preexisting osteoarthritis and provides that Arceo is still functional and mobile. *Id.* at 7-8. Although Dr. Younger testified that her hunched back was not the result of the injuries from her fall, Dr. Walker testified that her preexisting conditions did not cause her hunched appearance, and the hunch resulted from the fractures to her spine from her fall at Cost-U-Less. Moreover, Dr. Walker testified regarding the continued progression of her hunch and, along with Shriver, addressed the limitations in her mobility. As Dr. Walker and Shriver's testimony provide substantial evidence to support damages for Arceo's physical

---

[2] Arceo asked for $1.5 million in physical and emotional pain and suffering; thus, the jury awarded her half of what she sought.

[3] Arceo asked for $1.5 million in loss of enjoyment damages; thus, the jury awarded her about an eighth of her request.

impairment and disfigurement in the form of her limited mobility and hunched back from the various injuries she sustained during her fall, the Court finds the jury's $1 million award is supported by a reasonable certainty.[4]

Finally, Cost-U-Less argues that the evidence did not support a damages award for inconvenience because Arceo did not testify regarding inconvenience, and she is still able to drive normally. *Id.* at 8-9. However, Arceo did testify that she requires several pillows in order to drive now. Moreover, Arceo's brother testified that she has had to make life adjustments to account for the pain, and Arceo testified that she is scared to do things for fear of further injury. Finally, both Dr. Walker and Shriver testified regarding her limited mobility, and Shriver testified that she could not lift more than 10 pounds. Therefore, there was substantial evidence to support the jury's award of $125,000[5] in damages with reasonable certainty for inconvenience due to the multitude of ways that Arceo's injuries impact her life.

## C.     The Jury award was not the result of passion or prejudice.

Cost-U-Less argues that the damages awarded were excessive and given under the influence of passion and prejudice. *Id.* at 9-10. "When a party seeks a new trial based on a claim that damages are excessive and a result of passion, a reviewing court will not determine the amount it would have awarded as compensation for the injured party; rather, [it] must determine whether the jury's award is supported by the record when viewed in the light most favorable to the non-moving party." *B.M. Co.*, 2001 Guam 27 ¶ 55. Based on the analysis provided above, the Court finds that each of the damages awarded is supported by the evidence,

---

[4] The jury awarded Arceo double the amount she requested for this item. Based on her life expectancy of 10,000 days, however, the award equates to roughly $100 per day for her disfigurement. The Court finds this amount to be reasonable.

[5] The jury's award for inconvenience was roughly a fifth of what she requested.

ORIGINAL

and therefore, the damages award does not appear to have been given as a result of passion or prejudice.

**D.     The Court's finding that Doris Shriver was unavailable to testify was supported by reliable evidence and was not prejudicial.**

Cost-U-Less argues that the Court's finding of Shriver's unavailability due to her medical condition was based on insufficient and unreliable evidence. Mot. New Trial at 10-11. However, Cost-U-Less's arguments on this issue do not differ from the arguments they raised during the briefing prior to trial. In evaluating the evidence before trial, the Court found the representations regarding Shriver's medical condition credible and the law surrounding her testimony clear. Therefore, the Court reiterates and maintains its December 6, 2023 Order Granting Motion to Admit Doris Shriver's Prior Testimony Under GRE 804(A)(4) Due to Witness Unavailability.

The Court now turns to Cost-U-Less's argument that they were prejudiced by their inability to further voir dire Shriver. The unavailability exception—which allowed Shriver's recorded testimony—requires Cost-U-Less to have had an opportunity to develop testimony through cross-examination. Cost-U-Less did this at the prior trial and those portions were heard by the second jury. Moreover, Cost-U-Less failed to provide any law that would counter this or entitle them to further voir dire on an unavailable witness. Furthermore, Cost-U-Less only generally argues their alleged prejudice by being unable to further voir dire Shriver, providing that her methods are "general, conclusory[,] and based on minimal interactions with Ms. Arceo." *Id.* at 12. However, Cost-U-Less highlighted Shriver's lack of interactions with Arceo during the first trial; its arguments that her methodology is general and conclusory fail to provide a specific basis resulting in prejudice as this argument is vague and questions on these issues could have been asked during the first trial.



**E.      The introduction of new evidence against Ken Newson did not constitute a surprise or prejudice warranting a new trial.**

Cost-U-Less cites an 1870s California case to support that "[t]he introduction of new evidence, of which the opposite party had no notice or knowledge, at the close of evidence on the trial, is sufficient surprise to authorize the granting of a new trial." *Id.* at 12-13. However, section 21501 addresses surprise, allowing for a new trial where there is "[a]ccident or surprise, which ordinary prudence could not have guarded against." Moreover, the facts of the case cited by Cost-U-Less indicate that ordinary prudence could not have guarded against the surprise that occurred in that case. *See Delmas v. Martin,* 39 Cal. 555 (1870). Therefore, the Court looks to the standard provided by the Guam Code, requiring that "ordinary prudence could not have guarded against" the surprise. While the information presented in Court may have been a surprise to Cost-U-Less, the Court looks to whether ordinary prudence could have guarded against the surprise. The information presented here was a California Court of Appeals case discussing Newson's testimony, something that ordinary prudence certainly would have guarded against by simply searching their expert in a legal search engine or asking him about prior adverse determinations regarding his testimony. Therefore, while the information may have been a surprise to Cost-U-Less, ordinary prudence would easily have guarded against such a surprise.

**F.      The Motion for a Stay of Execution is moot.**

Cost-U-Less also moves the Court for a stay of execution of the judgment under Guam Rule of Civil Procedure 62(b). Mot. Stay Execution (Jan. 12, 2024). GRCP 62(b) allows for a stay of execution "pending the disposition of a motion for a new trial." As this Order disposes of Cost-U-Less's Motion for New Trial, the motion for a stay is now moot.

ORIGINAL

## III.    CONCLUSION AND ORDER

Based on the substantial evidence along with the lack of prejudice and surprise, the Court

DENIES the Motion for a New Trial; accordingly, the Motion for a Stay of Execution is moot.

**SO ORDERED** this 23 April 2024.

**HON. ELYZE M. IRIARTE**
**Judge, Superior Court of Guam**

Appearing Attorneys:
Matthew J. Holley, Esq., and Victorino D.L.G. Torres, Esq., Pacific Legal Team, P.C., for
      Plaintiff Juanita Arceo
Geri E. Diaz, Esq., Camacho Calvo Law Group, LLC, for Defendant CULGuam, Inc., doing
      business as Cost-U-Less Express

ORIGINAL